

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

_____

| | |
|---|---|
| ELIZABETH CANTAFI, ADMINISTRATOR ) | |
| OF THE ESTATE OF ZACHARY CANTAFI ) | |
| ELIZABETH CANTAFI, DANA ANDREWS ) | |
| and DANIELLE KORNACKI ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | NO. 3:23-CV-1245-KAD |
| ) | |
| STEPHANIE GRAYBEAL, ) | |
| UBER TECHNOLOGIES, INC., ) | |
| PORTIER, LLC, RASIER, LLC, VINCENT LISI, ) | |
| EDGAR PASTRANA and ASHLEY SULEWSKI ) | |
| Defendants. ) | FEBRUARY 7, 2024 |

_____

**PLAINTIFFS' OBJECTION AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT GRAYBEAL'S MOTION TO DISMISS**

The Plaintiffs – Elizabeth Cantafi in both her individual capacity and as administrator of the Estate of Zachary Cantafi, Dana Andrews, and Danielle Kornacki – object to Defendant Stephanie Graybeal's motion to dismiss (ECF 25, 11/20/23) and respectfully submit this memorandum of law in opposition to this motion to dismiss.

**I.      Background**

On or about August 29, 2021, Zachary Cantafi rode his bike through the intersection of Division Street and Hawthorne Street, Spokane, Washington. Dkt. 1-1, Count One ¶ 1. At the same time, Stephanie Graybeal – an Uber/Uber Eats driver – drove through the intersection and struck Zachary Cantafi with her car. *Id*. at ¶¶ 2-4. At the time

ATTORNEYS &
COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O  203 562 0900
F  203 562 0902
BBBATTORNEYS.COM



of the accident, Graybeal was speeding and operating her car under the influence of marijuana. *Id*. at ¶ 5. The collision caused fatal injuries to Zachary Cantafi. *Id*. at ¶ 10.

The Plaintiffs – Cantafi's estate, his grandmother who raised him, and his sisters – brought this action on August 24, 2023 in Connecticut state court against the Defendants – all entities or employees of the Uber brand. Dkt. 1-1. The Uber Defendants – Uber Technologies, Inc., Portier, LLC, and Rasier, LLC – removed this case to this court on September 22, 2023. Dkt. 1. The Plaintiffs filed a motion to remand the case to Connecticut state court on October 10, 2023. Dkt. 20. That motion remains pending before the Court.

Joined by Defendants Vincent Lisi, Edgar Pastrana, and Ashley Sulewski, the Uber Defendants moved to transfer this case to the Eastern District of Washington on November 13, 2023. Dkt. 22. The Plaintiffs objected to that motion on December 7, 2023. Dkt. 29. That motion remains pending before the Court.

Defendant Graybeal, however, filed a motion to dismiss the Plaintiffs' complaint against her on November 20, 2023. Dkt. 25. The main thrust of her arguments is that she was improperly served and that the court lacks personal jurisdiction over her. Dkt. 25-1.

The Court granted Plaintiffs' first motion for an extension of time to respond to this motion to dismiss (ECF 31, 12/6/23), giving Plaintiffs until January 6, 2024 to respond. The Court afforded Plaintiffs a second extension of time until February 7, 2024 (ECF 34, 1/5/24).

ATTORNEYS & COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O  203 562 0900
F  203 562 0902
BBBATTORNEYS.COM



## II. Legal Standard

When a defendant moves to dismiss due to insufficiency of service of process under Fed. R. Civ. P. 12(b)(5), the plaintiff bears the burden of proving adequate service. *Dickerson v. Napolitano*, 604 F.3d 732, 752-52 (2d Cir. 2010). The defendant's claim of an inadequacy in the service of process "must be specific and must point out in what manner the plaintiff has failed to satisfy the requirements of the service provision utilized." *Davis v. Mara*, 587 F.Supp.2d 422, 429 (D.Conn. 2008) (cleaned up).

A plaintiff also bears the burden of showing that the Court has personal jurisdiction over each defendant. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). In the absence of discovery and where the record consists entirely of the parties' pleadings and affidavits, the plaintiff must only make a prima facie showing that the court possesses jurisdiction over a defendant. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). While the Court may consider affidavits and other evidence submitted by the parties, the Court must "construe the pleadings and affidavits in the light most favorable to [the plaintiffs], resolving all doubts in [their] favor." *A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

## III. Argument

### A. The Plaintiffs do not claim that Conn. Gen. Stat. § 52-62 Provides The Vehicle For Service In This Matter.

As to Defendant Graybeal's first argument that Conn. Gen. Stat. § 52-62 only applies to accidents occurring within Connecticut, the Plaintiffs do not dispute that argument. By its plain language, Conn. Gen. Stat. § 52-62 applies only to claims for damages arising from a non-resident's operation of a motor vehicle within Connecticut:

ATTORNEYS & COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O  203 562 0900
F  203 562 0902
BBBATTORNEYS.COM



> Any nonresident of this state who causes a motor vehicle to be used or operated upon any public highway or elsewhere in this state shall be deemed to have appointed the Commissioner of Motor Vehicles as his attorney and to have agreed that any process in any civil action brought against him on account of any claim for damages resulting from the alleged negligence of the nonresident or his agent or servant in the use or operation of any motor vehicle upon any public highway or elsewhere in this state may be served upon the commissioner and shall have the same validity as if served upon the nonresident personally.

Conn. Gen. Stat. § 52-62(a).

The Plaintiffs do not dispute that the face of their complaint indicates that the accident complained of in this case took place in Spokane, Washington, not in Connecticut. Dkt. 1-1, Count One ¶¶ 1-10. Thus, Conn. Gen. Stat. § 52-62 is inapplicable to this case.

To the extent that the Plaintiffs' return of service indicates that they attempted to effectuate service of process on Graybeal in reliance on Conn. Gen. Stat. § 52-62, *see* Dkt. 1-4, p. 75, it only reflects a miscommunication between Plaintiffs' counsel and their state marshal. It was counsel's intention to service Graybeal under the Connecticut long-arm statute and they were under the impression that such service had been effectuated. After inquiry, they have been unable to figure out the cause of the miscommunication between them and their state marshal, and they will move for additional time under Fed. R. Civ. P. 4(m) to properly serve Graybeal under the long-arm statute.

**B. Defendant Graybeal Has Actual Notice Of This Action Pursuant To Connecticut's Long Arm Statute, Conn. Gen. Stat. § 52-59b(c), And The Plaintiffs' Mistake Regarding Service Is Not So Serious As To Prejudice Her.**

ATTORNEYS & COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O  203 562 0900
F  203 562 0902
BBBATTORNEYS.COM

4



Concurrent to her claim as to insufficient service under Conn. Gen. Stat. § 52-62(a), Graybeal also argues that the Plaintiffs did not serve her properly under Connecticut's long-arm statute, Conn. Gen. Stat. § 52-59b(c). Dkt. 25-1, p. 9.

If a defendant meets the requirements for Connecticut to assert personal jurisdiction over her under its long-arm statute, a plaintiff may serve such a defendant by

> leaving with or at the office of the Secretary of the State, at least twelve days before the return day of such process, a true and attested copy thereof, and by sending to the defendant at the defendant's last-known address, by registered or certified mail, postage prepaid, return receipt requested, a like true and attested copy with an endorsement thereon of the service upon the Secretary of the State.

Conn. Gen. Stat. § 52-59b(c).

In this case, Graybeal raises no complaint that the Plaintiffs have failed to comply with the mailed provision of service or that she has no notice of this action. She has received actual notice of this case, timely appeared, and has filed pleadings to assert her rights. Thus, while a miscommunication between Plaintiffs' counsel and their state marshal did cause errors in the service of process, Defendant Graybeal has not demonstrated any serious prejudice – either with respect to any statute of limitations or any other matter in this case – that would require dismissal rather than granting an extension of time to the Plaintiffs to cure errors in the process of service under Fed. R. Civ. P. 4(m).

All of the Plaintiffs' alleged errors are easily cured, and the Court should not grant Defendant Graybeal's motion to dismiss solely on the basis of an error that has not prejudiced her and can be cured before the Court decides this motion. Instead, it should



grant the Plaintiffs' Fed. R. Civ. P. 4(m) motion and reach the merits of the personal jurisdiction issues raised by the Defendants.

Further, the Plaintiffs' served the Defendant Graybeal's employer, Uber Technologies, and related entities through their designated agents for service in Connecticut. The return of service, in fact, noted that the Defendant Graybeal was served through the CT Corporation System, (Gary Scappini as agent), and service of the complaint as to the Defendant Graybeal was accepted by CT Corporation System as her agent for service in Connecticut. See Marshal Return, Exhibit 1.

**C. Defendant Graybeal Has Conceded That The Court Has Personal Jurisdiction Over Her By Failing To Move To Dismiss Counts Seventeen, Eighteen, And Nineteen Of The Complaint, And The Doctrine Of Pendent Personal Jurisdiction Gives The Court Personal Jurisdiction Over Her For Purposes Of Counts One, Two, And Three.**

Defendant Graybeal moves to dismiss Counts One, Two, and Three alleging a lack of personal jurisdiction over her. Dkt. 25. She, however, failed to move to dismiss Counts Seventeen, Eighteen, and Nineteen against her for lack of personal jurisdiction. Dkt. 25. Her failure to do so concedes that the Court has personal jurisdiction over her for those claims. *See* Fed. R. Civ. P. 12(h) (establishing that a party waives any defense listed in Fed. R. Civ. P. 12(b)(2)-(5) by failing to include it in an initial Fed. R. Civ. P. 12(b) motion). Her consent to personal jurisdiction by failing to raise it as to these counts triggers the doctrine of pendent personal jurisdiction.

The Second Circuit has recognized pendent personal jurisdiction, but it has not fully fleshed out the parameters of the doctrine. *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056-57 (2d Cir. 1993). *Herrmann* specifically recognized pendent personal

ATTORNEYS & COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O  203 562 0900
F  203 562 0902
BBBATTORNEYS.COM

6



jurisdiction where the Multiemployer Pension Plan Amendments Act established a nationwide system for serving process and a venue rule:

> [U]nder the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process, and the federal and state claims "derive from a common nucleus of operative fact", *see United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available.

*Id*. at 1056.

To the best of the undersigned's knowledge, it does not appear that the Second Circuit has considered any other contexts in which pendent personal jurisdiction applies. Because pendent personal jurisdiction is not explicitly authorized by statute though, it is inherently a federal common law doctrine – the parameters of which must be determined by the courts. *United States v. Botefuhr*, 309 F.3d 1263, 1272-73 (10th Cir. 2002). Thus, the policy reasons underlying pendent personal jurisdiction inform the proper scope of its parameters.

The Ninth Circuit aptly described the policy reasons underlying pendent personal jurisdiction as follows:

> When a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts. We believe that judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties is best served by adopting this doctrine.

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004).

This approach would apply with equal force in diversity cases such as this one and is consistent with the approach taken by courts across the United States. *See Picot v.*

ATTORNEYS & COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O  203 562 0900
F  203 562 0902
BBBATTORNEYS.COM



*Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (holding that a party may claim personal pendent jurisdiction in a diversity jurisdiction case even though it affirmed the finding of a lack of personal jurisdiction); *Pet Specialties, LLC v. Navisiontech, Inc.*, 2019 WL 4773623 at *8-9 (M.D. N.C. 2019); *see also* 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.7 (4th ed) (explaining that pendent personal jurisdiction can exist in the context of diversity jurisdiction).

The Court should exercise its discretion and find pendent personal jurisdiction as to Graybeal here. There can be no meaningful dispute that the factual allegations against her in Counts One, Two, and Three supply the core of the allegations contained in Counts Seventeen, Eighteen, and Nineteen. In fact, the only difference between the facts underlying these two sets of counts is the allegations pertaining to the injuries caused by Graybeal's deplorable conduct. Counts Seventeen, Eighteen, and Nineteen specifically incorporate the factual allegations brought in Counts One, Two, and Three and plead those as the cause of the injuries alleged therein. Dkt. 1-1, Count Seventeen ¶ 1, Count Eighteen ¶ 1, Count Nineteen ¶ 1. Thus, each of the facts contained therein arises from the same common nucleus of operative facts, thus supporting the exercise of the Court's discretion to find pendent jurisdiction.

Finally, if the Court takes the approach commented on in dicta by the Seventh Circuit and finds that pendent personal jurisdiction should properly be located in Connecticut's long-arm statute, it should certify the question of whether Conn. Gen. Stat. § 52-59b includes pendent personal jurisdiction to the Connecticut Supreme Court for determination since, to the best of the undersigned's knowledge, no binding Connecticut

ATTORNEYS & COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O  203 562 0900
F  203 562 0902
BBBATTORNEYS.COM



precedent guides a resolution of this question. *See Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 913 (7th Cir. 1994) (holding that the district court's application of pendent personal jurisdiction was probably an interpretation of Illinois' long-arm statute).

> **D. The Court May Properly Assert Personal Jurisdiction Over Defendant Graybeal Because, As An Employee Of The Uber Defendants, She Should Have Expected Her Reckless And Negligent Driving To Have Consequences in Connecticut And She Derives Substantial Revenue From Interstate Commerce.**

Defendant Graybeal argues that Connecticut's long-arm statute does not confer personal jurisdiction over her on the Court because she does not transact any business in Connecticut personally, she does not engage in a persistent course of conduct directed at Connecticut, and she does not derive substantial revenue from services rendered in Connecticut through interstate or international commerce. Dkt. 25-1, pp. 9-12. Graybeal's argument, however, devotes little attention to the nature of her relationship with the Uber Defendants and the scope of Connecticut's long-arm statute.

First, the Plaintiffs do not dispute that Conn. Gen. Stat. § 52-59b(a)(1) imposes a textual requirement that an individual – even as an employee of a company – must personally transact business within Connecticut. *See also Grunberger Jewelers v. Leone*, 2004 WL 1393608 at *3 (D.Conn. 2004). This section, however, does not establish an exclusive prerequisite to the assertion of personal jurisdiction under the long-arm statute as Defendant Graybeal seems to have it. The statute's plain language repeatedly uses the disjunctive "or" to denote that each of its provisions establish separate criteria for long-arm jurisdiction.

ATTORNEYS &
COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM



Second, the same reasoning would apply to Conn. Gen. Stat. § 52-59b(a)(3)(A), which permits long-arm jurisdiction if a person commits a tortious act outside the state that injures a person within a state if the tortfeasor regularly does or solicits business, engages in conduct directed at Connecticut, or derives substantial revenue from services rendered in Connecticut. Once again, the statute's plain language repeatedly uses the disjunctive "or" to denote that this provision is not an exclusive scenario.

Defendant Graybeal subsequently presses her argument too far when it comes to Conn. Gen. Stat. § 52-59b(a)(3)(B), which provides in relevant part:

> [A] court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association, who in person or through an agent… commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent… expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce….

She conclusorily claims that she is not an employee of the Uber Defendants but rather an independent contractor. Dkt 25-1, pp. 11-12. She also does not make any effort to discuss whether she derives substantial revenue from interstate commerce. *Id*. at p. 12. Both omissions are critical to this case and the determination of personal jurisdiction.

Start with the plain language of the statute. Connecticut courts have personal jurisdiction over tortious acts occurring outside Connecticut that cause injury to someone within Connecticut. Conn. Gen. Stat. § 52-59b(a)(3)(B). There is no question that the Plaintiffs satisfy this requirement. While Zachary Cantafi's tragic death came at Graybeal's hands in Spokane, Washington, the injuries it caused reverberated across the United

ATTORNEYS & COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O  203 562 0900
F  203 562 0902
BBBATTORNEYS.COM

10



States and in Connecticut specifically. Graybeal's motion concedes as much by failing to move for the dismissals of the Plaintiffs' loss of consortium claims in Counts Seventeen through Nineteen for lack of personal jurisdiction as discussed previously. Thus, the Plaintiffs satisfy the first element of claiming long-arm jurisdiction under § 52-59b(a)(3)(B).

Graybeal does not dispute the element that she expected or should have reasonably expected her actions to have consequences in Connecticut. Nor can she. As discussed, her failure to contest on personal jurisdiction grounds the loss of consortium claims brought in Counts Seventeen through Nineteen acknowledges that she should have known that, in today's diverse society where technology bridges the gaps between far-distant places, her actions in Spokane, Washington could have devastating consequences on a family in Connecticut.

The final component of this analysis is the requirement that Graybeal must derive substantial revenue from interstate commerce. Connecticut courts interpret this provision of Conn. Gen. Stat. § 52-59b(a)(3)(B) as narrowing the long arm "reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause a direct, foreseeable injury within [Connecticut] but whose business operations are of a local character. *Pronovost v. Tierney*, 174 Conn.App. 368, 374 (2017) (cleaned up). In other words, "substantial revenue means enough revenue to indicate a commercial impact *in the forum*, such that a defendant fairly could have expected to be haled into court there…." *Id*. (cleaned up). This inquiry is highly fact specific.



Graybeal's affidavit only establishes that she has no personal connection to Connecticut. Dkt. 25-2. Apart from conclusorily stating that she has never been an employee, agent, or representative of the Uber Defendants, her affidavit does not provide any details as to the nature of the relationship between her and the Uber Defendants. *Id*. at ¶ 9. This is a critical question because it determines the critical question of who must derive substantial revenue from interstate commerce in Connecticut: the Uber Defendants or Graybeal herself.

Connecticut generally employs the common law "agency" or "right of control" test to distinguish between employees and independent contractors. *Compassionate Care, Inc. v. Travelers Indem. Co.*, 147 Conn.App. 380, 390-91 (2013). Under this test,

> "[t]he fundamental distinction between an employee and an independent contractor depends upon the existence or nonexistence of the right to control the means and methods of work.... It is the totality of the evidence that determines whether a worker is an employee under the act, not subordinate factual findings that, if viewed in isolation, might have supported a different determination.... For purposes of workers' compensation, an independent contractor is defined as one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work.... Many factors are ordinarily present for consideration, no one of which is, by itself, necessarily conclusive. While the method of paying by the hour or day rather than by a fixed sum is characteristic of the relationship of employer and employee, it is not decisive.... Nor is it decisive that the injured party uses his own tools and equipment.... The retention of the right to discharge, upon which the finding is silent, is a strong, but again not a controlling, indication that the relationship is one of employment.... Other persuasive factors that a person is holding oneself out to be an independent contractor include the issuance of 1099 federal tax forms ... and engaging independently in business with third parties and doing business apart from the putative employer under a different name."

*Id*. at 391 (cleaned up).

ATTORNEYS & COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O 203 562 0900
F 203 562 0902
BBBATTORNEYS.COM



> In other words,
>
> [o]ne is an employee of another when he renders a service for the other and when what he agrees to do, or is directed to do, is subject to the will of the other in the mode and manner in which the service is to be done and in the means to be employed in its accomplishment as well as in the result to be attained.... The controlling consideration in the determination whether the relationship of master and servant exists or that of independent contractor exists is: Has the employer the general authority to direct what shall be done and when and how it shall be done—the right of general control of the work?.... In contrast, [a]n independent contractor relinquishes control to the entity that hires him or her of the results of his or her work only....

*Id*. at 391 (cleaned up).

As applied to the Uber Defendants, this question requires discovery and significant amplification beyond the facts currently available to the parties now. The Plaintiffs' allegations, however, are far more than Graybeal's conclusory statement though. They allege that the Uber Defendants are "in the business of hiring, training, engaging, employing, dispatching, directing and controlling drivers to pick up and deliver food to customers for compensation." Dkt. 1-1, p. 2, ¶ 12. They further allege that the Uber Defendants engage in second-by-second monitoring as to their drivers' on-the-job conduct, including their speed, driving, and location. *Id*. at p. 48, ¶ 15. They further allege that the Uber Defendants provide warnings to speeding drivers. *Id*. at p. 48, ¶ 15. To become an Uber driver, the Plaintiffs allege that all drivers, including Graybeal, had to "complete an application process, provide documented proof of a driver's license, vehicle registration, and vehicle insurance." *Id*. at p. 52, ¶ 12.

Furthermore, the Plaintiffs allege that the Uber Defendants exercise tight control over their drivers, including by controlling the drivers' customers, requiring drivers to

ATTORNEYS & COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O  203 562 0900
F  203 562 0902
BBBATTORNEYS.COM

13



place company identification on their cars, designating the routes that drivers take to fulfill a job, requiring drivers to comply with all of their policies and procedures, and setting the rates for the drivers' services. *Id*. at pp. 54-55.

These factors all favor the conclusion of the Uber Defendants' control over drivers in the nature of an employer because the Uber Defendants do not merely control the outcome of the drivers' work but also how they perform it. The Uber Defendants require drivers to comply with Uber's policies and procedures, follow the routes designated by Uber, adhere to Uber's policies for their on-the-job conduct, and brand themselves as Uber drivers. These are all factors that indicate an employee relationship. Graybeal, however, offers nothing more than her own claim that she is not an employee of the Uber Defendants. Without more, the Court should construe the pleadings and affidavits in favor of the Plaintiffs and find at this stage that the Plaintiffs have plausibly alleged that Graybeal is an employee of the Uber Defendants.

How does a finding that she is an employee of the Uber Defendants impact the question of personal jurisdiction? There is no question that the Uber Defendants derive substantial revenue from interstate commerce occurring in Connecticut. The Connecticut Supreme Court and Appellate Courts have never defined whether an individual employee's involvement in commercial activity that impacts a forum must take place in that specific forum for purposes of establishing personal jurisdiction. Despite Graybeal's assertions that she has never engaged in any form of commercial activity in Connecticut, discovery is needed as to whether Graybeal – through her employment with the Uber Defendants – engaged in commercial activity through the Uber Defendants that bore a

ATTORNEYS & COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O  203 562 0900
F  203 562 0902
BBBATTORNEYS.COM

14



connection to Connecticut. Did she perform Uber jobs that were ordered by Connecticut residents still in Connecticut who were traveling to Washington – e.g., picking them up from the Spokane International Airport at a scheduled time? Did she ever deliver food or other goods for a Connecticut resident who ordered from Connecticut for a relative in Washington or elsewhere? If the answer to any of these questions is yes, Graybeal's involvement with Connecticut will be sufficiently established to demonstrate the economic connection to Connecticut required by its long arm statute.

Only discovery will yield the answers to these questions. If the Court rejects the Plaintiffs' arguments as to pendent personal jurisdiction, it should allow the Plaintiffs to conduct discovery from the Uber Defendants to whether Graybeal had any involvement in any of its Connecticut operations from which it derived revenue.

**E. The Court May Exercise Specific Jurisdiction Over Defendant Graybeal Without Violating Her Due Process Rights Because She Has Waived Them And Because Further Discovery Is Needed On Graybeal's Connections To Connecticut.**

As her final argument, Graybeal asserts that due process prohibits the Court from asserting personal jurisdiction over her. Dkt. 25-1, pp. 12-15. Specifically, she argues that the Court may not assert general jurisdiction over her and her allegedly non-existent connections to Connecticut are insufficient to confer jurisdiction on her. *Id*. Both arguments, however, miss the mark because of her waiver of her right to challenge personal jurisdiction as to Counts Seventeen, Eighteen, and Nineteen.

The Supreme Court has carefully noted that due process considerations only apply to questions of personal jurisdiction when a defendant has not consented to suit in a jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 470 & n.14 (1985). As discussed

ATTORNEYS & COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O  203 562 0900
F  203 562 0902
BBBATTORNEYS.COM



previously, Graybeal has waived her right to challenge the Court's personal jurisdiction over her as to Counts Seventeen, Eighteen, and Nineteen. Under the doctrine of pendent personal jurisdiction, the Court may exercise jurisdiction over her for purposes of Counts One, Two, and Three. Thus, simply put, there is no due process issue regarding personal jurisdiction as it pertains to Counts One, Two, and Three.

If the Court concludes otherwise, the Plaintiffs do not contest that the Court does not have general jurisdiction over Graybeal for due process purposes because she is not "at home" in Connecticut. *Ford Motor Company v. Montana Eighth Judicial District Court*, 141 S.Ct. 1017, 1024 (2021).

For the Court to exercise specific personal jurisdiction, Graybeal's contacts with Connecticut must be such that she "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). In other words, Graybeal must have performed "some act by which [she] purposefully availed [herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Ruzewicz*, 471 U.S. 462, 475 (1985) (cleaned up).

As discussed previously, Graybeal is an employee of the Uber Defendants who derive substantial revenue through systematic contacts with Connecticut. The very nature of her employment with the Uber Defendants has connected her to commercial transactions that have possibly arisen out of contacts with Connecticut. As discussed previously, only discovery can reveal whether Graybeal has had sufficient contacts with Connecticut sufficient to establish personal jurisdiction. The Court should refrain from

ATTORNEYS & COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O  203 562 0900
F   203 562 0902
BBBATTORNEYS.COM

Case 3:23-cv-01245-KAD   Document 36   Filed 02/07/24   Page 17 of 17



making a due process determination until the Plaintiffs have had an opportunity to ascertain Graybeal's connection to Connecticut – something that they are unable to do otherwise given the brief and tragic nature of their intersection of their lives.

IV.     **Conclusion**

For the foregoing reasons, the Plaintiffs respectfully request that the Court deny Defendant Graybeal's motion to dismiss.

RESPECTFULLY SUBMITTED,

THE PLAINTIFFS

BY: /s/ Kenneth James Krayeske
Kenneth James Krayeske – CT 28498
Peter Christopher Bowman
BBB Attorneys, LLC
3651 Main Street
Suite 200
Stratford, CT 06614
203-562-0900
203-562-0902 (fax)
filing@bbbattorneys.com
kkrayeske@bbbattorneys.com

ATTORNEYS & COUNSELORS

3651 MAIN STREET
SUITE 200
STRATFORD, CT
06614

41 NORTH MAIN STREET
SUITE 303
WEST HARTFORD, CT
06107

O  203 562 0900
F  203 562 0902
BBBATTORNEYS.COM

17