UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CANTAFI *et. al.*, | ) | 3:23-CV-01245 (KAD) |
|     *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GRAYBEAL *et. al.*, | ) | JULY 2, 2024 |
|     *Defendants*. | ) | |

**MEMORANDUM OF DECISION**
**RE: PLAINTIFFS' MOTION TO REMAND (ECF NO. 20)**

Kari A. Dooley, United States District Judge:

Plaintiffs are the family members and/or representatives of Zachary Cantafi who died after he was struck by an Uber driver, Defendant Stephanie Graybeal ("Graybeal"), while riding his bike in Spokane, Washington. Plaintiffs filed this action in the Superior Court of Connecticut in September 2023 and named as defendants, in addition to Graybeal, Uber Technologies Inc., Portier, LLC, Rasier, LLC (collectively, the "Uber Defendants"), as well as Vincent Lisi, Edgar Pastrana, and Ashley Sulewski (collectively, the "Individual Defendants"). On September 9, 2023, the Uber Defendants timely removed the case to federal court. In the Notice of Removal, ECF No. 1, the Uber Defendants invoked the Court's diversity jurisdiction. Although the Individual Defendants are residents of Connecticut, the Uber Defendants assert that their citizenship should be disregarded insofar as they were fraudulently joined in this action in an effort to defeat diversity jurisdiction. Notice of Removal, ECF No. 1, at 1.[1] Pending before the

---

[1] All citations to the parties' papers are to the ECF page number, not to any internal page numbering.

Court is Plaintiffs' motion to remand.[2] For the reasons that follow, the motion to remand is GRANTED.

### Applicable Law

The federal removal statute permits a civil defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction … to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "Congress has given the federal district courts original jurisdiction over civil actions between 'citizens of different States' where, as here, the amount in controversy exceeds $75,000." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir. 2004) (quoting 28 U.S.C. § 1332(a)). "The citizenship requirement for diversity jurisdiction has been interpreted to mean complete diversity so that each plaintiff's citizenship must be different from the citizenship of each defendant." *Id*. Further, an action that is removable solely on the basis of diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

"On a motion to remand, the court construes all factual allegations in favor of the party seeking the remand." *Wise v. Lincoln Logs, Ltd.*, 889 F. Supp. 549, 551 (D. Conn. 1995). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Mihok v. Medtronic, Inc.*, 119 F. Supp. 3d

---

[2] Following removal, the Uber Defendants filed a motion to transfer venue to the Eastern District of Washington (ECF No. 22); Graybeal filed a motion to dismiss (ECF No. 25); Plaintiffs opposed the motion to dismiss and also sought an extension of time within which to effectuate service on Graybeal (ECF Nos. 36, 37); and Graybeal objected to the motion for extension of time (ECF No. 38). As the Court remands this matter to the Superior Court, these pending motions are not addressed.

22, 26 (D. Conn. 2015) (quoting *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013)).

"[A] plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir. 1998). Accordingly, the doctrine of "fraudulent joinder" provides that if an action is brought against both diverse and non-diverse defendants, the defendants may "invoke the federal court's diversity jurisdiction by contending that the non-diverse defendant or defendants were not properly joined as defendants in state court." *Wise*, 889 F. Supp. at 551.

"Under the doctrine, courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court." *Briarpatch Ltd.*, 373 F.3d at 302 (citing *Pampillonia*, 138 F.3d at 461).[3] "Put another way, 'joinder will be considered fraudulent when it is established that there can be no recovery against the defendant under the law of the state on the cause alleged.'" *Mihok*, 119 F. Supp. 3d at 34 (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001)); *see also Soto v. Bushmaster Firearms Int'l, LLC.*, 139 F. Supp. 3d 560, 562 (D. Conn. 2015) (describing fraudulent joinder as applying "when it is objectively reasonable to infer that the plaintiff has engaged in a form of litigation abuse"). "The defendant bears the heavy burden of proving this circumstance by clear and convincing evidence, with all factual and legal ambiguities resolved in favor of plaintiff." *Briarpatch Ltd.*, 373 F.3d at 302. "The fraudulent joinder standard is strictly applied . . . [e]ven allegations that are general and at times in barebones language may be

---

[3] "[W]here, as here, the defendant at issue is both non-diverse and a forum resident, the doctrine also permits the Court to overlook the forum defendant rule of 28 U.S.C. § 1441(b) when fraudulent joinder has been demonstrated." *Kenneson v. Johnson & Johnson, Inc.*, No. 3:14-CV-01184 (MPS), 2015 WL 1867768, at *2 n.1 (D. Conn. Apr. 23, 2015) (internal quotations omitted).

sufficient to defeat a claim of fraudulent joinder," and a defendant cannot carry its burden merely by asserting "that the complaint fails to state a claim against a non-diverse defendant." *Mihok*, 119 F. Supp. 3d at 34–35 (quotation marks, citations, and alterations omitted).[4]

**Allegations**

Plaintiffs bring this lawsuit alleging that their decedent, Zachary Cantafi ("Cantafi"), died on or about August 30, 2021, after Defendant Stephanie Graybeal, who was operating a motor vehicle at the time as an "agent, employee, and/or representative" of the Uber Defendants, struck Cantafi as he was riding his bicycle. Ex. A to Notice of Removal at 2, ECF No. 1-1 ("Compl."). Specifically, they assert negligence, statutory recklessness, and common law recklessness against Defendant Graybeal and allege that she was operating her vehicle under the influence of marijuana and in excess of the speed limit. *Id.* Plaintiffs additionally assert negligence, recklessness, product liability, and claims arising under the Connecticut Unfair Trade Practices Act against the Uber Defendants. As to the Individual Defendants, Plaintiffs assert negligence as to all three, specifying that they held various high level administrative and executive positions for the Uber Defendants, and that prior to the death of the decedent:

- "[K]new or should have known of issues in the Uber Eats drivers' program." *Id.* at 30, 32, 35.

- "[K]new or should have known of issues related to intoxicated drivers, speeding drivers and other driver actions that were unsafe." *Id.* at 30, 32-33, 35.

---

[4] While courts in this Circuit do not always apply the "no possibility" standard literally and some have instead asked whether there is "no reasonable basis" for anticipating liability, *see Oliva v. Bristol–Myers Squibb Co.*, No. 3:05-CV-00486 (JCH), 2005 WL 3455121, at *2 (D. Conn. Dec. 16, 2005) (discussing variations); *see also Mihok*, 119 F. Supp. 3d at 34 n.7, even this seemingly more lenient inquiry requires proof "by clear and convincing evidence" and thus the standard remains "a high one" in either case. *Oliva*, 2005 WL 2005 WL 3455121, at *2.; *cf. Soto*, 139 F. Supp. 3d at 563 n.6 ("While courts in this Circuit have applied varying formulations of the standard for fraudulent joinder, . . . analysis of the cases shows that, in substance, the courts are applying the 'no possibility' standard set forth in *Pampillonia, see* 138 F.3d at 461, which is the standard applied here.") (citing *Oliva*, 2005 WL 3455121). As discussed *infra*, the Court would decline to find fraudulent joinder under either formulation of the standard.

- "[K]new or should have known that persons were injured as a result of these actions, including members of the general public, such as the decedent." *Id.* at 30, 33, 35-36.

Plaintiffs additionally made the following allegations against each Individual Defendant:

- "[The Individual Defendant's team], under the direction of the [Individual] Defendant were negligent in so far as … [they] failed to monitor, supervise and review Uber Eats driver performance; failed to establish codes of employee conduct including but not limited to obeying traffic laws, such as speeding driving under the influence of marijuana or other drugs or alcohol; failed to review systems which track time and route to whether drivers are operating vehicles in excess of speed limits; failed to warn public pedestrians and purchasers of services that drivers are not monitored for use of marijuana or other drugs or alcohol; failed to discipline drivers who engage in negligent and illegal conduct." *Id.* at 30, 33, 36 (internal punctuation omitted).

Additionally as to Sulewski, Plaintiffs allege that she and her team "encouraged, through the use of bonuses and financial incentives, unsafe driving habits of [their] delivery drivers; took on new restaurant and business accounts, the use of incentives, promises or guarantees, which the Defendants knew the system could not handle, thus setting up the safety systems to fail, by requiring drivers to speed and hiring drivers who were not qualified; failed to discipline drivers who engage in negligent and illegal conduct." *Id.* at 36 (internal punctuation and capitalization omitted).

Thereafter, Plaintiffs detail the nature and scope of their injuries and those of the decedent. *Id.* at 31, 33, 34, 37. Plaintiffs also asserted common carrier liability against Defendant Uber Eats, and loss of consortium as to all defendants.

**Discussion**

The Uber Defendants have not met their heavy burden. The Defendants deny that the Individual Defendants had any involvement or actual responsibility for Cantafi's injuries or the accident by which he was injured. They argue that "[i]t is well established that an officer of a corporation does not incur personal liability for its torts merely because of his official position."

Defs.' Obj. to Mot. to Remand, ECF No. 21 at 7 ("Obj."), quoting *Sturm v. Harb Dev., LLC*, 298 Conn. 124, 132 (2010). Defendants attach affidavits from each Individual Defendant detailing their job responsibilities and expressly denying that their job responsibilities entail those that are alleged in Plaintiffs' complaint.

    *Sturm* does not preclude a finding of liability as to the Individual Defendants because it is equally well-established in Connecticut that "[w]here … an agent or officer commits or participates in the commission of a tort, whether or not he acts on behalf of his principal or corporation, he is liable to third persons injured thereby." *Scribner v. O'Brien, Inc.*, 169 Conn. 398, 404 (1975). Indeed, "[i]t is the general hornbook rule that [a]n agent is subject to liability to a third party harmed by the agent's tortious conduct" and that "[u]nless an applicable statute provides otherwise, *an actor remains subject to liability although the actor acts as an agent or an employee*, with actual or apparent authority, *or within the scope of employment.*" *Cuaya v. Compere*, No. 3:23-CV-01214 (JAM), 2023 WL 8231225, at *4 (D. Conn. Nov. 28, 2023) (quoting Restatement (Third) of Agency, § 7.01 (2006) (emphasis in original) (internal quotation marks omitted). Since *Scribner* was decided in 1975, the Connecticut Supreme Court has, on many occasions, re-affirmed its holding, rejecting arguments by defendants that— notwithstanding their acts of personal involvement—they could not be individually liable for various torts beyond negligence if they acted on behalf of a corporate employer or principal. *See, e.g., Joseph Gen. Contracting, Inc. v. Couto*, 317 Conn. 565, 583-93 (2015) (individual liability for violation of the Connecticut Unfair Trade Practices Act); *Coppola Const. Co. v. Hoffman Enterprises Ltd. P'ship*, 309 Conn. 342, 354-358 (2013) (individual liability for tort of negligent misrepresentation). And federal courts have repeatedly relied on *Scribner* to reject arguments that the doctrine of fraudulent joinder prevents a federal court from remanding an action to state

court because a plaintiff named individual defendants who acted negligently in the course of their employment for an out-of-state corporate defendant. *See Cuaya,* 2023 WL 8231225 at 4, citing *Sweeting v. Dollar Tree Stores, Inc.*, 2023 WL 4043918, at *5 (D. Conn. 2023); *Marr v. Mercedes-Benz USA, LLC*, 2020 WL 1891630, at *2 (D. Conn. 2020) (citing cases); *Reynolds v. Dollar Tree Distribution, Inc.*, 2020 WL 1129909, at *3 (D. Conn. 2020) (citing cases).

As detailed above, Plaintiffs have alleged that each of the Individual Defendants had a specific role in the negligent policies and practices at Uber which resulted in the accident that killed Zachary Cantafi. For example, Plaintiffs allege that Defendant Lisi knew or should have known of safety issues with the Uber Eats program; that drivers were sometimes intoxicated, speeding or otherwise driving in an unsafe manner; and that persons were being injured as a result. They allege job responsibilities that would have required action by Defendant Lisi once he garnered this actual or constructive knowledge. Direct acts of negligence are then listed to include, *inter alia*, failures to warn; failures to monitor, supervise, or review driver performance; and failures to establish or enforce a driver code of conduct. Plaintiffs offer similar involvement in the negligence which caused Cantafi's injuries with respect to the other Individual Defendants. To address these allegations of direct personal involvement in the events giving rise to Cantafi's injuries, the Defendants have submitted affidavits from each of the Individual Defendants that deny the allegations regarding the scope of their respective job responsibilities and affirmatively assert that their job responsibilities did not include any of the actions identified as negligent in Plaintiffs' complaint, *i.e.,* monitoring driver conduct. But these affidavits are not clear and convincing evidence that the Individual Defendants were fraudulently joined. Ultimately, Plaintiffs' theory of liability for the Individual Defendants may fail, but it is not for this Court to decide the merits of the claim at this stage or for the purposes of determining fraudulent joinder.

The Uber Defendants have not proven, by clear and convincing evidence, that there is "no possibility" of recovery under Connecticut law.

**Conclusion**

The motion to remand, ECF No. 20, is GRANTED. The Clerk of the Court is respectfully directed to remand this case back to the State of Connecticut Superior Court, Judicial District of Hartford, from which it was removed.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of July 2024.

                                          */s/ Kari A. Dooley*
                                          KARI A. DOOLEY
                                          UNITED STATES DISTRICT JUDGE